614 A.2d 246

**MERIDIAN OIL AND GAS ENTERPRISES, INC.**

v.

**The PENN CENTRAL CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 15, 1992.

Filed Aug. 7, 1992.

Reargument Denied Oct. 19, 1992.

232

Matthew J. Siembieda, Philadelphia, for appellant.

William T. Jorden, Meadville, for appellee.

Before CAVANAUGH, WIEAND and HESTER, JJ.

CAVANAUGH, Judge.

Appellant, The Penn Central Corporation (Penn Central), appeals from an order of the Crawford County Court of Common Pleas entering judgment on a jury verdict in favor of appellee, Meridian Oil & Gas Enterprises, Inc. (Meridian), in the amount of $800,000 plus interest. Because we find the lower court erred in precluding Penn Central's use of a prior judicial determination to collaterally bar the instant action, we reverse the order entering judgment on the jury verdict and remand for a new trial.

Penn Central is in the business of selling abandoned railroad lines. It first sells the rails, ties and fixtures. Next, it

sells the ballast, and finally the land.[1] On October 17, 1979, following a telephone conversation between James Shearer, Meridian's owner and president and T.E. Jordan, a Penn Central employee, Penn Central issued a sales order to Meridian, in which Penn Central sold and Meridian purchased 31.4 miles of ballast on the Erie and Pittsburgh branch of a rail line between Jamestown and Albion, Pennsylvania for the amount of $40,820. The sales order did *not* define the term "ballast," specify depth and width limitations on the ballast sold, or provide a time limit for removal. According to Shearer's testimony, he had never purchased ballast before the October 1979 contract with Penn Central.

Under the name, James Drilling Corporation, Shearer entered into two more ballast removal contracts with Penn Central on a different rail line. A sales order dated November 9, 1979, contained no time limit for removal but specifically provided that "Ballast is to be removed to a depth not exceeding 15″ deep and 10′ wide." A sales order dated December 22, 1980, provided depth and width limits of fifteen inches and ten feet, respectively and required that the ballast be removed by a specified date, just over five months from the date on the sales order.

At some point after entering into the ballast removal contracts, Shearer discovered that he did not own the appropriate equipment to remove ballast. Shearer then purchased the necessary equipment and proceeded to remove ballast on the three lines.

On February 27, 1980, Penn Central sold by quitclaim deed a one mile stretch of land on the Erie and Pittsburgh rail line to Warren Kelly. The land Kelly purchased fell within the perimeters of Meridian's October 17, 1979 ballast removal contract with Penn Central. Kelly began removing ballast on

1. Ballast or top-ballast is a layer of rocks or other material, placed under the tracks of a rail line to hold the tracks and ties in place. Beneath the top-ballast is another layer of material, sub-ballast, designed to provide drainage, prevent upheaval from frost, and distribute the load over the roadbed. Beneath the sub-ballast is the sub-grade, a foundational layer of earth, cleared free of top soil. *See THE TRACK CYCLOPEDIA,* 9th ed. (1978).

the one mile stretch of land and Meridian sued to permanently enjoin further ballast removal by Kelly.

On June 24, 1982, Judge Thomas of the Crawford County Court of Common Pleas issued a *decree nisi* denying Meridian's request for a permanent injunction. *Meridian Oil and Gas Enterprises, Inc. v. Warren Kelly,* Court of Common Pleas, Crawford County, Civil–Equity 11 (1982). In *Kelly,* Judge Thomas framed the issue before the court as:

> [W]hether the Plaintiff's [Meridian's] contract [with Penn Central] to buy ballast from an abandoned rail line ... includes all material between the top of the now rail free right-of-way to the natural ground level, or whether ballast is a term limited to the material directly beneath and to the side of the ties and rails and resting on other surface material to support the former ties and rails.

Trial Court Opinion, June 24, 1982, at 1.

The court then made the following finding of fact:

> Shearer, Meridian's President and owner, contends no mention was made of the depth and width of the ballast in his first contract at issue here ..., so that he essentially bought everything between the top of the line down to natural ground level. Testimony clearly establishes that the term ballast has a clear and recognized meaning in the railroad construction business and is the top course of dense material upon which ties are imbedded. A Penn Central employee, T.E. Jordan, testified that he specifically spelled out to Shearer in the negotiations, as he does to all potential ballast buyers, the depth and width of the ballast he was buying and that the descriptive 15″ x 10′ language normally used in all ballast contract sales was inadvertently left off the Meridian contract. We find as a fact that Shearer knew or should have known that his purchase of ballast was a purchase of the topmost course of material constituting the right-of-way bed and did not include materials in the right-of-way below approximately the top 15 inches.

Trial Court Opinion, June 24, 1982, at 3.

Judge Thomas then concluded as a matter of law that under Meridian's October 17, 1979 ballast removal contract with

Penn Central, Meridian purchased ballast to a depth not in excess of fifteen inches from the top of the former ties and to a width of ten feet. Judge Thomas concluded that under his deed from Penn Central, Kelly purchased all materials beneath the ballast in the right-of-way for a distance of one mile. Judge Thomas further concluded that Meridian had no further right to remove materials from the one mile strip owned by Kelly.[2]

On August 25, 1982, Penn Central notified Meridian by letter that according to an on-site evaluation by a Penn Central field employee, Meridian had removed all of the ballast to which it was entitled under the October 17, 1979 contract and that Meridian should cease removing anymore material.

On January 28, 1983, Meridian filed a complaint against Penn Central in the Crawford County Court of Common Pleas requesting the court to declare that Meridian's rights under the October 17, 1979 contract entitled it to all ballast, without limitation, from the sub-grade to the top of the ballast. On February 7, 1986, Meridian filed a motion for leave to amend their complaint, which was granted by Judge Walker on March 22, 1988. On April 27, 1988, Meridian filed an amended complaint, which added a request for an award of compensatory and punitive damages for Penn Central's willful, fraudulent and intentional conduct in depriving Meridian of its ballast by quitclaiming property subject to the ballast removal contract to third parties. On April 27, 1988, Penn Central filed an answer to Meridian's amended complaint, which made no mention of the prior judicial determination in the *Kelly* case.

On October 3, 1988, the parties met for a pretrial conference before Judge Thomas, who was scheduled to preside at the trial. Penn Central submitted a pretrial narrative raising as a defense Judge Thomas' prior determination in *Kelly* that Meridian was only entitled to ballast fifteen inches deep and ten feet wide under the sales order at issue. Judge Thomas

2. On appeal to this Court, we affirmed Judge Thomas' *decree nisi* denying Meridian's request for a permanent injunction. *Meridian Oil v. Warren Kelly*, 339 Pa.Super. 625, 488 A.2d 1170 (1984) (Memorandum).

indicated that he would allow Penn Central to use the collateral estoppel defense at trial. R.R. at 942a.

On October 7, 1988, Meridian filed a motion *in limine* to preclude Penn Central from using the collateral effect of the *Kelly* decision at trial. The case was then reassigned to Judge Walker, who granted Meridian's motion *in limine* one day before trial on October 10, 1988. Judge Walker first determined that the collateral estoppel issue was properly before him and turned to the merits of the defense. Judge Walker then decided to preclude Penn Central's use of the defense because Meridian obtained certain Penn Central documents in the second action during discovery that Judge Walker determined were inaccessible to Meridian in the *Kelly* case.

At trial, Meridian presented the testimony of James Shearer and an expert, Charles Alsdorf, both of whom had testified in the *Kelly* case.[3] Penn Central presented the prior recorded testimony of T.E. Jordan from the *Kelly* case.[4] The jury returned a verdict in favor of Meridian for compensatory damages in the amount of $800,000 plus interest.[5] Penn Central appealed and now raises six issues for our review.

Penn Central's first claim is that the lower court should have given collateral estoppel effect to the *Kelly* decision to avoid relitigation of Meridian's rights under the October 17, 1979 sales order. Because we find Penn Central's first contention meritorious and reverse on that ground, we do not reach the other five issues on appeal.[6] Before we may ad-

---

3. Meridian also had another expert testify, Michael McManus, who had not testified in the *Kelly* case.

4. In addition, Penn Central introduced the deposition testimony of James Shearer and Edward Claypole, a Penn Central employee. An expert also testified for Penn Central.

5. The court had directed a verdict in favor of Penn Central on Meridian's claim for punitive damages at the close of plaintiff's case.

6. Penn Central's five additional grounds for a new trial are: (1) Meridian's amended complaint added a cause of action sounding in tort, which was barred by the statute of limitations; (2) the jury verdict is contrary to the evidence, grossly excessive and a shock to the sense of justice; (3) the trial court's jury instruction regarding construction of the sales order was erroneous and confusing; (4) the trial court erroneously allowed Meridian's experts to testify when they had not

dress, however, the merits of the collateral estoppel issue, we need to respond to Meridian's assertion that Penn Central has waived consideration of the matter since it was not pleaded in a New Matter or in preliminary objections.

■ Although Pa.R.Civ.Proc. 1030 does not specifically list collateral estoppel as an affirmative defense, it is within the contemplation of the rule, which requires affirmative defenses to be pleaded in a responsive pleading under the heading "New Matter." Rule 1032 provides that a party waives, subject to certain exceptions, all defenses which are not presented either by preliminary objection, answer, or reply. Penn Central did not raise collateral estoppel as a defense until the pretrial conference before Judge Thomas, when it was raised in a pretrial narrative.

■ At the conference, Judge Thomas indicated his approval of Penn Central's use of the defense at trial, which was tantamount to approving an amendment under Pa.R.Civ.Proc. 1033. R.R. at 942a. The case, however, was then reassigned to Judge Walker and Meridian filed a motion *in limine* to preclude use of the defense at trial. In granting Meridian's motion *in limine*, Judge Walker treated the collateral estoppel issue as properly raised by Penn Central and proceeded to address the merits of the defense. Judge Walker, reasoning perhaps that the defense, having been raised at the pretrial conference, qualified as an amendment to the pleadings under Rule 1033. In his opinion, Judge Walker states:

> There is no procedural bar to the defendant raising the collateral estoppel issue at the pretrial conference or in its post trial motion. *Meridian v. Kelly* was not a *final* judgment of record at the time of the initial pleadings and the defense may be raised when it becomes available. See *Williams v. W.C.A.B. (Philadelphia)*, 119 Pa.Cmwlth. 127, 546 A.2d 747 (1988) (collateral estoppel may be raised when it becomes available but no later than at the pretrial conference).

been properly identified prior to trial; and (5) the trial court erroneously summarized in a jury instruction the rebuttal testimony of a Penn Central employee.

Trial Court Opinion, September 21, 1991, at 6.

Thus, as both trial court judges treated the defense as properly raised, we may do likewise. *See Thatcher's Drugs of West Goshen, Inc. v. Consol. Supermarkets, Inc.*, 391 Pa.Super. 524, 532, 571 A.2d 490, 494 (1990), *appeal granted* 526 Pa. 638, 584 A.2d 320 (1990); and *Iorfida v. Mary Robert Realty Co., Inc.*, 372 Pa.Super. 170, 175, 539 A.2d 383, 386 (1988). *Cf. Kurtas v. Kurtas*, 521 Pa. 105, 109, 555 A.2d 804, 806 (1989) (plurality) (where court concluded in context of waiver of issues due to untimely filing of post-trial motions that rigid application of our rules of civil procedure does not serve intended purpose of justice and fairness); and *Williams v. W.C.A.B. (Philadelphia)*, 119 Pa.Cmwlth. 127, 132, 546 A.2d 747, 750 (1988) (where court concluded that affirmative defense of collateral estoppel should have been raised at the very latest at the pretrial conference). Therefore, we will respond to the claim that the trial court erred in granting a motion *in limine* which precluded Penn Central's use of the collateral estoppel defense.

■ "A motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered." *Commonwealth v. Johnson*, 399 Pa.Super. 266, 269, 582 A.2d 336, 337 (1990) (citation omitted), *appeal granted* 529 Pa. 617, 600 A.2d 534 (1991). When reviewing rulings on motions *in limine*, this Court applies the scope of review appropriate to the particular evidentiary matter at issue. *Johnson* at 269, 582 A.2d at 337.

■ The decision to allow or to deny a prior judicial determination to collaterally bar relitigation of an issue in a subsequent action historically has been treated as a legal issue. As such, this Court is not bound by the trial court's conclusions of law and we may draw our own conclusions from the facts as established. *2401 Penn. Ave. Corp. v. Fed. of Jewish Agencies of Greater Philadelphia*, 507 Pa. 166, 172, 489 A.2d 733, 736 (1985); *Gemini Equipment Co. v. Pennsy Supply, Inc.*, 407 Pa.Super. 404, 411, 595 A.2d 1211, 1214 (1991). Our inquiry, therefore, focuses on whether the trial court erred in preclud-

ing the collateral effect of *Kelly* to bar relitigation of the ballast limitations issue.

 The doctrine of collateral estoppel or issue preclusion prevents a question of law or an issue of fact that has once been litigated and fully adjudicated in a court of competent jurisdiction from being relitigated in a subsequent suit. *Blake v. Garvin,* 403 Pa.Super. 208, 210, 588 A.2d 553, 555 (1991). An adjudication in equity is as conclusive as a judgment at law and can have collateral estoppel effect upon a subsequent action at law. *Cf. Consol. Coal Co. v. Dist. 5, United Mine Workers of America,* 336 Pa.Super. 354, 362, 485 A.2d 1118, 1122 (1984) *(res judicata* claim) (quoting *Exner v. Exner,* 268 Pa.Super. 253, 257, 407 A.2d 1342, 1344 (1979)).

The court below held that Meridian did not have a full and fair opportunity to litigate the issue of the ballast limitations in *Kelly* because Meridian did not have the benefit of internal documents obtained from Penn Central during discovery in the second action. The court found that the documents, allegedly showing bad faith on the part of Penn Central, were inaccessible to Meridian in the *Kelly* case due to the time constraints of an equity action and the limited discovery allowed of a non-party's documents.

 Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment. *City of Pittsburgh v. Zoning Bd. of Adjustment of Pittsburgh,* 522 Pa. 44, 55, 559 A.2d 896, 901 (1989) (citations omitted). *Melat v. Melat,* 411 Pa.Super. 647, 653, 602 A.2d 380, 384 (1992).

 Instantly, the court below improperly applied the doctrine. In the *Kelly* case, Judge Thomas was called on to determine the issue of the limitations, if any, on the ballast

that Meridian had purchased under the October 1979 sales order with Penn Central. Judge Thomas declared that Meridian was only entitled to ballast fifteen inches deep and ten feet wide under its contract with Penn Central. We have thoroughly reviewed the record in the instant case and there is no doubt that this case dealt with the same issue that was presented to the court in *Kelly*. Further, of the three witnesses who testified for Meridian at the second trial, two of them had previously testified for Meridian in the *Kelly* case. Thus, the first element of collateral estoppel was met as Meridian relitigated in the instant case the same issue that was previously litigated in *Kelly*.

The second element that final judgment in the previous action was rendered on the merits of the issue was met as Meridian appealed Judge Thomas' decision to this Court and we affirmed. The third requirement was also met. The party against whom the issue of collateral estoppel had been raised, Meridian, was a party in the *Kelly* case.

The fourth requirement that the party against whom the defense is raised must have had a full and fair opportunity to litigate the issue was also met. The issue of the ballast limitations under the October 1979 contract was fully presented to the court in *Kelly*. James Shearer, president of Meridian, testified that no mention was made of depth or width limitations while negotiating his first contract and that he believed he purchased all material below the ties down to the sub-grade. Charles Alsdorf, an expert, also testified on behalf of Meridian. T.E. Jordan testified that he specifically spelled out to Shearer during negotiations, the depth and width limitations on the ballast. Testimony also established that ballast has a clear and recognized meaning in the railroad business as the top coarse material upon which the ties are imbedded. There is no question but that the issue of the ballast limitations under the October 1979 contract was fully covered at the hearing on the permanent injunction and the court specifically found that Shearer knew or should have known of the ballast limitations in the contract.

Further, we are not persuaded by the argument that the equity action did not afford Meridian sufficient time to discover Penn Central's documents, showing the alleged bad faith in the transaction. There has been no showing that Meridian was denied an adequate opportunity to conduct discovery or investigation before or during the conduct of the *Kelly* trial. Thus, we conclude that Meridian had adequate time to investigate in the *Kelly* case and the fact that they could present more evidence in the second action was not a sufficient ground for disallowing the application of the doctrine. *Com., Dept. of Transp. v. Martinelli,* 128 Pa.Cmwlth. 448, 452–55, 563 A.2d 973, 976–77 (1989).

It is also clear that the fifth requirement was met as it was essential in *Kelly* to determine the dimensions of the ballast that Meridian had purchased under the contract with Penn Central in order to decide whether Kelly's activities on the one mile stretch should have been permanently enjoined.

Since Meridian had already received an adverse judgment on the same issue for which it sued Penn Central and since all of the elements for use of the defense of collateral estoppel were met, Meridian should not have been entitled to a second bite of the apple. Thus, we hold that the court below erred in granting Meridian's motion *in limine,* thereby precluding Penn Central's use of the *Kelly* decision to collaterally bar the instant case. Accordingly, we reverse on this issue and remand for a new trial.

Finally, we are troubled by the excessiveness of the $800,-000 verdict compared to Meridian's out-of-pocket expenses. As this case is to be retried, however, we will not formally address this claim for relief.

Order entering judgment on the jury verdict reversed. Case remanded for a new trial. Jurisdiction relinquished.