**Ronald FLORA and Lucille Flora, Appellants,**

v.

**Dr. George P. MOSES, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 7, 1998.

Filed March 19, 1999.

597

Albert J. Flora, Jr., Wilkes-Barre, for appellants.

Patrick T. O'Connell, Wilkes-Barre, for appellee.

Before KELLY, BROSKY and BECK, JJ.

BROSKY, J.

¶ 1 This is an appeal from a judgment entered in appellee's favor in a medical malpractice/breach of contract action. Appellants raise three issues for our review, whether § 606 of the Health Care Services Malpractice Act (HCSMA), 40 P.S. § 1301 *Et seq.*, relied upon by the lower court in finding in appellee's favor, is unconstitutional; whether § 606 of the HCSMA prohibits a patient from bringing a breach of contract/warranty action; and whether appellee waived the defense by failing to raise it in new matter? We affirm.

¶ 2 Appellant Ronald Flora came under appellee's care in February of 1994 while he was being treated for a diabetic foot infection. It was determined shortly thereafter that appellant was suffering from peripheral vascular disease. Appellee recommended periodic debridement and wet soaks to keep the infected site as clean as possible along with antibiotic treatment and auto-amputation of the toes on Mr. Flora's right foot. Between February 27, 1994 and June of 1994 Mr. Flora underwent the prescribed treatment.

¶ 3 In July 1994 Mr. Flora developed dry gangrene of his right foot and an ulcer on his left foot that subsequently developed into dry gangrene. On July 28, 1994 Mr. Flora was diagnosed at Hahnemann University Hospital as having gangrene in both lower extremities and subsequently, on August 2, 1994, underwent bilateral below-the-knee amputation of both lower extremities.

¶ 4 On February 25, 1997, appellants filed a complaint against appellee alleging that appellee breached a contract and warranty relative to the medical treatment of Mr. Flora. More specifically, appellants assert that appellee assured Mr. Flora that if he underwent the treatment prescribed in February 1994, including the auto-amputation of his toes, he would not lose his legs and would recover from his affliction. Further, appellants alleged that since Mr. Flora in fact lost his legs to gangrene appellee breached an oral contract or warranty of a particular result. Appellee filed an answer and new matter and then, on June 30, 1997, filed a

motion for judgment on the pleadings asserting that appellants' theories of recovery were barred by § 606 of the HCSMA. The trial court agreed with appellee and granted appellee's motion for judgment on the pleadings. The present appeal followed.

¶ 5 Section 606 of the Health Care Services Malpractice Act, 40 P.S. § 1301.606 states "[i]n the absence of a special contract in writing, a health care provider is neither a warrantor nor a guarantor of a cure." It is conceded that Mr. Flora and appellee did not execute a written agreement purporting to guarantee a specific result of treatment and that no such agreement exists. Consequently, upon the surface it would appear that the trial court properly granted judgment on the pleadings. Nevertheless, appellants contend their action is viable for two reasons. First they assert that § 606 is unconstitutional.[1] Secondly, they contend that even if valid § 606 does not preclude the action in contemplation.

¶ 6 The HCSMA was passed for the purpose of streamlining and expediting the disposition of medical malpractice actions, ensuring that claimants who were injured as a result of a tort or breach of contract would receive fair and reasonable compensation for their losses and to make medical liability coverage available at a reasonable cost.[2] A major part of the legislation involved the setting up of a mandatory arbitration process. These provisions of the Act granted exclusive original jurisdiction of medical malpractice claims to an arbitration panel set up by the Act. Thus a litigant's malpractice claim was required to be referred to an arbitration panel prior to gaining access to the Courts of Common Pleas. The compulsory arbitration provisions came under attack as an unconstitutional abridgement of the right to a jury trial in *Parker v. Children's Hospital of Philadelphia*, 483 Pa. 106, 394 A.2d 932 (1978). However, our Supreme Court deferred a final judgment on the matter until such time as the effects of the legislation upon the administration of medical malpractice claims could be ascertained.

¶ 7 The sections of the HCSMA relating to the compulsory arbitration provisions, § 309, were, in fact, later found unconstitutional in *Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190 (1980). The Court came to this conclusion primarily because they determined that the arbitration provisions were not fulfilling their intended function. Subsequent to the *Mattos* decision additional provisions of the act were subjected to constitutional scrutiny in *Heller v. Frankston*, 504 Pa. 528, 475 A.2d 1291 (1984). In *Heller* the court considered the viability of § 307, which requires the administrator to approve a settlement of a minor's claim, and § 604, which set a maximum ceiling on the percentage of attorney's fees allowed, and concluded that these sections were intertwined and ancillary to the arbitration provisions already ruled unconstitutional in *Mattos*. Although other constitutional attacks had been leveled the Court found these provisions unconstitutional because the court interpreted its *Mattos* decision as having invalidated the entire arbitration scheme.

¶ 8 The section at issue here, § 606, is not one of the sections that have been expressly found unconstitutional. Nevertheless, relying upon the authority of *Heller* appellants argue that § 606 is ancillary to the arbitration provisions of the Act and should likewise be stricken as unconstitutional. Unfortunately for appellants we find their argument unconvincing. Unlike the provisions of the Act under scrutiny in *Heller* § 606 is neither tied literally nor logically to the arbitration and administration aspects of the Act. In essence, § 606 is a limited and particularized statute of frauds addressing a certain type of contractual scenario. It neither involves nor requires the arbitration provisions for independent viability. As such, the *Mattos* and *Heller* decisions do not argue for a finding of unconstitutionality and we find no constitutional infirmity with this section.

¶ 9 As indicated above, appellants not only argued that the section in question was

---

1. We note that appellants provided the Attorney General with the requisite notice that they were challenging the constitutionality of a Pennsylvania statute. *See,* Pa.R.C.P. 235.

2. *See, Heller v. Frankston,* 504 Pa. 528, 475 A.2d 1291 (1984).

unconstitutional, but also that it did not preclude the action filed here. The gist of appellants' second argument is that the alleged contract between Mr. Flora and appellee was not for a "cure" but rather for a specific result from treatment and, as such, does not fall within the provisions of § 606. Although in a hyper-technical sense there may be a difference between a "result of treatment" and a "cure" we are unwilling to embrace such an interpretation as to do so would clearly frustrate the purpose of the provision in question.

¶ 10 The provision in question was designed to address the realities of medical practice. There are so many variables in medical treatment of an individual that it is almost impossible for a medical doctor to predict the precise result of a medical procedure or course of treatment. *See, Grabowski v. Quigley*, 454 Pa.Super. 27, 684 A.2d 610 (1996). The section in question endeavors to recognize that except in relatively rare cases a doctor's statements regarding a course of treatment should not be viewed, and will not be construed, as a "guarantee" that the procedure or treatment will produce the desired effect. The section does not endeavor to prevent a doctor and patient from entering into such an agreement, despite the relative uncertainty of treatment, should they be willing to do so. It merely endeavors to prevent any controversy and confusion over such an undertaking by requiring that such an agreement be expressly set forth in a writing thereby unequivocally detailing the intent of the parties.

¶ 11 In the present case Mr. Flora came under appellee's care while suffering from peripheral vascular disease, a condition which could very foreseeably result in the development of gangrene and the loss of appellant's legs. Undoubtedly, the desired result of treatment was two-fold, an elimination or amelioration of appellant's vascular disease as well as the saving of Mr. Flora's legs from amputation. Had Mr. Flora been "cured" of the vascular disease he likely would not have suffered the amputation of his leg. Conversely, the failure to "cure" appellant's vascular disease resulted in appellant suffering gangrene and necessitated the amputation of his lower legs. As such, the guarantee of a result of treatment would equate with a guarantee of a cure and, in our opinion, any agreement guaranteeing that Mr. Flora would not suffer the loss of his legs if he underwent the prescribed treatment would be required to be in writing.

¶ 12 Lastly, appellants argue that appellee waived the affirmative defense of § 606 by failing to allege it in new matter. Appellants are correct that a litigant is obligated to raise affirmative defenses in new matter. *See*, Pa.R.Civ. P. 1032. Nevertheless, *Meridian Oil & Gas Enterprises, Inc. v. Penn Central Corp.*, 418 Pa.Super. 231, 614 A.2d 246 (1992), indicates that where an affirmative defense which was not raised in new matter is proffered by a party at a later stage of the proceedings and is considered by the court, the court's consideration is treated as approving an amendment under Pa. R.Civ.P. 1033. The court's consideration of the § 606 defense upon a motion for judgment on the pleadings equates to an approval of an amendment to the pleadings. Thus, the defense is not deemed waived.

¶ 13 For the above reasons we affirm.

¶ 14 Judgment affirmed.