J-A18021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PITNEY ROAD PARTNERS, LLC T/D/B/A REDCAY COLLEGE CAMPUSES I | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MURRAY ASSOCIATES ARCHITECTS, P.C. | |
| Appellee | No. 2253 MDA 2013 |

Appeal from the Order Entered on November 19, 2013
In the Court of Common Pleas of Lancaster County
Civil Division at No.: CI-06-01429

BEFORE:  LAZARUS, J., WECHT, J., and MUSMANNO, J.

MEMORANDUM BY WECHT, J.:                **FILED SEPTEMBER 18, 2014**

Pitney Road Partners, LLC t/d/b/a Redcay College Campuses I ("Pitney"), appeals from the order entered November 19, 2013, granting the motion for summary judgment filed by Murray Associates Architects, P.C. ("Murray").  We are tasked with determining whether the trial court properly held that an arbitration decision between Pitney and a third party, Warfel Construction Company ("Warfel"), entitles Murray to summary judgment as a matter of law under the doctrine of collateral estoppel.  After careful review, we affirm.

The following facts are taken from the trial court's opinion of November 19, 2013:

> This litigation arises as a result of the construction of a building on the Lancaster campus of [Harrisburg Area Community College ("HACC")].  Between 2002 and 2003, Pitney entered into

discussions with Warfel to construct a classroom building on land owned by Pitney and leased to HACC. Warfel contracted with Murray, an architectural firm that had worked with HACC in the past, to provide the architectural services for constructing the new building. Under the [oral] agreement, Murray was to prepare plans, drawings and specifications for the project known as the Phase II Expansion Project.

Pitney met with Warfel and Murray numerous times in 2003 during which Pitney claims it told them that the new building should be identical to the existing building on the property. Pitney alleged Warfel and Murray represented that the new building would look the same, a representation upon which Pitney claims it relied.

Pitney asserts that Warfel's and Murray's representations in the plans about the design of the new building were false and misleading and, as a result, a significant number of changes had to be made which greatly increased the cost to Pitney. Specifically, Pitney claims over 50 windows, brick banding, and a notch for a stairwell had to be added to the new building to make it conform to the design of the existing building.

Pitney also alleges Warfel and Murray falsely represented that the HVAC system was complete and would fit in the building as it was designed. In fact, crucial pieces of equipment were omitted and there was not enough space left under the trusses of the roof to fit the equipment. As a result, [] substantial reworking of the roof and duct work was required. Pitney further claims that Warfel and Murray falsely represented that the building's facade could be constructed with brick, but it needed steel support beams to keep from collapsing.

Pitney alleges Warfel and Murray knew Pitney relied upon the plans prepared by Murray in determining its budget for the Phase II project. Pitney claims that as a result of Warfel's and Murray's false misrepresentations, the Phase II project was delayed[,] resulting in lost rental income, and Pitney incurred additional costs to correct the problems with the design.

Trial Court Opinion ("T.C.O."), 11/19/2013, at 1-3 (footnote and record citations omitted).

Pitney refused to pay Warfel because of the construction delays, and Warfel could not pay its subcontractors. Warfel filed suit against Pitney to recover the amounts owed, and Pitney filed a counterclaim to recover its increased costs due to the design errors made by Murray, including the HVAC system, the facade, and the windows and brick banding. *Id.* at 3-4.

Warfel and Pitney proceeded to binding arbitration, and after ten days of testimony, on May 12, 2006, the arbitration panel rendered an award in favor of Warfel for $5,971,010.61. The panel stated: "The counterclaims and setoffs of Pitney Road Partners, LLC t/d/b/a Redcay College Campuses I, are denied in their entirety. . . . The award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied." Award of Arbitrators, 5/12/2006, at 3.

Pitney filed motions to vacate or modify or correct the arbitration award. Additionally, on June 21, 2006, Pitney filed the instant complaint against Warfel, HACC, and Murray. Meanwhile, on February 9, 2007, the trial court confirmed the arbitration award upon Warfel's petition. On May 4, 2007, the court granted HACC's preliminary objections in the instant case because, in its complaint, Pitney had failed to state a cause of action against HACC. Pitney did not appeal this determination or amend its complaint to state a claim against HACC. On August 17, 2007, the parties entered into a formal settlement agreement by which Pitney dismissed its claims in the instant suit against Warfel, and released its claims against Warfel's agents. On November 26, 2007, Pitney discontinued this action against Warfel.

- 3 -

On March 22, 2013, Murray, the remaining defendant, filed a motion for summary judgment in which Murray asserted that Pitney's claims were precluded by collateral estoppel and barred by the settlement agreement between Pitney and Warfel. Pitney responded on June 24, 2013, and on November 19, 2013, the trial court granted Murray's motion for summary judgment, concluding that Murray was entitled to judgment as a matter of law because Pitney was collaterally estopped from relitigating the claims that were settled by the arbitration award. Pitney timely appealed on December 19, 2013, and filed a Rule 1925(b) statement on January 10, 2014. *See* Pa.R.A.P. 1925. On February 6, 2014, the trial court entered its Rule 1925(a) opinion, in which it found Pitney's claims waived on appeal because, in its Rule 1925(b) statement, "Pitney does not state with specificity why the [c]ourt's determinations were legally incorrect, merely that they were." Rule 1925(a) Opinion, 2/06/2014, at 4.

Pitney raises the following two issues for our review, which we have reordered for ease of disposition:

> 1. Whether Pitney's Concise Statement of Matters Complained of on Appeal ("Concise Statement") identified the issues Pitney is raising on appeal with sufficient specificity?
>
> 2. Whether the trial court erred in applying collateral estoppel and, specifically, in holding that the issue of Murray's alleged design errors was adjudicated by the arbitrators and essential to their decision in the ***Warfel v. Pitney*** Arbitration, thus precluding Pitney from litigating the issue in the ***Pitney v. Murray*** Lawsuit and resulting in the granting of Murray's summary judgment motion?

Pitney's Brief at 4.

- 4 -

We turn first to Pitney's contention that the trial court erred in deeming the issues waived on appeal because Pitney failed to identify its issues with sufficient specificity in its Rule 1925(b) statement. We agree with Pitney that its issues are not waived.

> Failure to comply with a Rule 1925(b) order may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of. Regarding vague or overly broad statements, this Court has also stated:
>
>> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.
>>
>> In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. While [*Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998)] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise Statement, for the reasons set forth above we conclude that *Lord* should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal.

*Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa. Super. 2006) (most citations omitted). "[T]he waiver determination is . . . tantamount to a conclusion of law, over which our review is plenary." *Commonwealth v. Laboy*, 936 A.2d 1058, 1059 (Pa. 2007); *see also McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 658 n.2 (Pa. Super. 2000) ("Since the Rules of Appellate Procedure apply to criminal and civil cases alike, the principles enunciated by *Lord* are equally applicable in civil cases.").

Here, Pitney raised the following three issues in its Rule 1925(b) concise statement:

> a. The [c]ourt erred in holding that there was no genuine issue of material fact concerning whether Murray made errors and omissions in its design for the project at Harrisburg Area Community College's Lancaster Campus.
>
> b. The [c]ourt erred in holding that Pitney was collaterally estopped from litigating the issue of Murray's alleged design errors and omissions in the present lawsuit based upon the outcome in the **Warfel v. Pitney** Arbitration.
>
> c. The [c]ourt erred in holding that Murray met all five requirements necessary for invoking the doctrine of collateral estoppel, specifically: (1) that the issue decided in the prior case is identical to the one presented in the later case, (2) that there was a final judgment on the merits, (3) that the party against whom the plea is asserted was a party or in privity with a party in the prior case, (4) that the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding, and (5) that the determination in the prior proceeding was essential to the judgment.

Rule 1925(b) Statement, 1/10/2014, at 1-2. Pitney therefore identified its issue on appeal as the trial court's application of collateral estoppel to grant summary judgment to Murray. Furthermore, even after finding waiver, the trial court was able to conduct an alternative analysis, in which it stated:

> [T]he basis for the [c]ourt's decision on the issue Pitney raises on appeal is set out in the opinion and order of November 19, 2013. Because the [c]ourt found that Pitney's claims against Murray were barred by the doctrine of collateral estoppel, there was no need to determine whether an issue of material fact existed as to Murray's alleged errors and omissions in its design.

Rule 1925(a) Opinion, 2/06/2014, at 4. Thus, Pitney's statement was not "so vague as to prevent the court from identifying the issue to be raised on appeal." **Lineberger**, 894 A.2d at 148.

Accordingly, the trial court erred in deeming Pitney's issues waived for vagueness. However, "we may affirm a trial court's ruling on any basis supported by the record on appeal." **Lynn v. Nationwide Ins. Co.**, 70 A.3d 814, 823 (Pa. Super. 2013). Therefore, because Pitney has not waived its claims on appeal, we will proceed to review the merits of Pitney's remaining issue.

In the second issue, Pitney contends that "[t]he trial court erred in applying collateral estoppel and granting Murray's summary judgment motion because the arbitrators' [a]ward in the **Warfel v. Pitney** [a]rbitration does not establish that the issue of Murray's alleged design errors was either adjudicated by the arbitrators or essential to their Award." Pitney's Brief at 17. We disagree.

> Our standard of review of a grant of summary judgment is an abuse of discretion. Summary judgment as a matter of law may be had where there are no genuine issues of material fact as to a cause of action. Pa.R.[C].P. 1035.2. Summary judgment is properly granted on grounds of *res judicata* and/or collateral estoppel if there is no genuine issue of material fact and the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits disclose that the moving party is entitled to judgment as a matter of law.

**Robbins v. Buck**, 827 A.2d 1213, 1214 (Pa. Super. 2003) (case citations omitted). Here, the trial court determined that Pitney was collaterally

estopped from raising claims of alleged design error by Murray because of the arbitrators' decision in favor of Warfel on May 12, 2006.

> The decision to allow or to deny a prior judicial determination to collaterally bar relitigation of an issue in a subsequent action historically has been treated as a legal issue. As such, this Court is not bound by the trial court's conclusions of law and we may draw our own conclusions from the facts as established.

*Meridian Oil & Gas Enters., Inc. v. Penn Cent. Corp.*, 614 A.2d 246, 250 (Pa. Super. 1992).

> Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.
>
> Collateral estoppel, sometimes referred to as issue preclusion, operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit.

*Kituskie v. Corbman*, 682 A.2d 378, 382 (Pa. Super. 1996) (citations omitted).

In the instant case, Pitney challenges the first and fifth elements of the collateral estoppel test, arguing that the doctrine applies "only when an issue has been adjudicated and is essential to the judgment in a prior proceeding." Pitney's Brief at 18. Specifically, Pitney argues that "there were several legitimate bases by which the arbitrators could have reached their decision [in *Warfel v. Pitney*] without having to even consider, let

alone decide, the issues concerning Murray's alleged design errors." ***Id.*** Thus, our task is to determine whether the trial court erred in determining that Pitney's claims against Murray were adjudicated as a part of the arbitration, and if so, whether they were "essential" to the arbitrators' decision. ***See Kituskie***, 682 A.2d at 382.

First, we address whether Pitney's claims against Murray were adjudicated in the arbitration. In its complaint in the instant litigation, Pitney raises one count of negligent misrepresentation against Murray, alleging that Murray violated section 552 of the Restatement (Second) of Torts[1] by "negligently misrepresent[ing] that certain information in its plans and drawings was accurate when, in fact, it was not[.]" Amended Complaint, 8/08/2006, at 10 ¶ 44; ***see id.*** at 9-10 ¶¶ 38-45. Specifically, "Pitney's claims against Murray assert that Pitney relied on Murray's misrepresentations that its design would match the existing building and that the design was free of errors and omissions." Pitney's Brief at 28. "For

_____

[1] **§ 552 Information Negligently Supplied for the Guidance of Others**

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1).

example, the design did not match the existing building, the front entrance lacked sufficient structural support, the truss design would not accommodate the HVAC equipment, and the plans, if followed, would have created student safety issues." *Id.* at 33.

In its arbitration brief, Pitney argued as follows:

Many of the more costly problems resulted from poor coordination between the project architect, Murray, and Warfel. For example, despite the fact that all parties understood that the new academic building was to be substantially similar to the existing building, Murray did not include plans for windows. The windows in the first academic building were in plain view and obvious even to a casual onlooker. The failure to notice that windows were not in the architectural plans added significant costs to the project. . . .

Another problem with Murray's design and its implementation occurred during the construction phase of the academic building. The height of the penthouses was incorrect, and, therefore, duct work could not be installed. The roof trusses had to be redesigned to accommodate the HVAC equipment. This caused delays in the roof installation. As a result, the drywall and insulation were in place before the roof was finished. This caused leaks which resulted in mold damage.

Pitney's Arbitration Brief at 7-8.

During closing arguments for arbitration, Pitney asserted that Murray's work was "substandard" and that Murray was responsible for "issues with finalized design drawings and specifications for the project." Pitney's Closing Brief at 11, 12. Pitney claimed that Murray's "poor job performance . . . resulted in increased and unnecessary costs of the job," in part, as follows:

The penthouse area was poorly designed as the rooms were not designed to accommodate the [HVAC] equipment that was

designed, and that the roof truss system would have to be redesigned, if possible, to accommodate this equipment.

There were design problems with the entrance. It became very obvious that there was an error made on the structural steel as far as accommodating the brick that was to go up over the entrance, over the peak. There was nothing there to carry it, which led to subsequent discussions with Murray . . . , and there had to be a redesign of the front steel.

*Id.* at 11-12 (quotation marks and record citations omitted).

Finally, the proposed verdict slip that Pitney submitted to the arbitration panel included the following queries:

5.     Was Murray negligent or did Murray breach its agreement with Warfel in its design of the Phase II class building in any of the following respects?

A. In designing the penthouse, HVAC systems and duct work in the penthouse;

B. In designing the front entrance to the building;

C. In designing the building without all appropriate windows and brick banding.

6.     Set forth the amount of damage that [Pitney] suffered as a result of Murray's negligence and/or breach of its agreement. Suggested answer: $558,209.72.

Pitney's Proposed Verdict Slip at 2-3. Therefore, the record demonstrates that Pitney presented to the arbitrators its allegations that Murray negligently designed the building with respect to the HVAC system, roof trusses, façade, and failure to match the first academic building. *See id.* We agree with the trial court that "[t]he design errors alleged by Pitney . . . are identical to those presented at the arbitration between Warfel and Pitney." T.C.O. at 8. Thus, Murray has satisfied the first element of the

collateral estoppel test, in that "the issue decided in the prior case is identical to one presented in the later case." **Kituskie**, 682 A.2d at 382.

Second, Pitney challenges whether these issues were essential to the arbitration award, arguing that "[t]he arbitrators did not have to consider, let alone adjudicate, the issue of Murray's alleged design errors in denying Pitney's claims in the **Warfel v. Pitney** [a]rbitration." Pitney's Brief at 18. Pitney asserts that "Warfel presented several arguments/defenses to Pitney's claims that, if accepted by the arbitrators, would have defeated Pitney's claims without requiring the arbitrators to reach the issue of Murray's alleged design errors." **Id.** We disagree.

When determining whether an issue is essential to the final judgment, our Courts have looked to the context of the claim and whether it affected the decision or damages rendered in the prior proceeding. **See, e.g.**, **Stidham v. Millvale Sportsmen's Club**, 618 A.2d 945, 955 (Pa. Super. 1992) (collaterally estopping insurance company from relitigating issue of insured's negligence where "the finding of negligence was essential to the judgment of damages" in prior jury verdict against insured); **Meridian Oil & Gas Enters.**, 614 A.2d at 252 (collaterally estopping litigation where question of contract rights were essential in prior case "to determine the dimensions of the ballast that Meridian had purchased under the contract with Penn Central in order to decide whether Kelly's activities on the one mile stretch should have been permanently enjoined"); **Incollingo v. Maurer**, 575 A.2d 939, 941 (Pa. Super. 1990) ("There is no doubt that the

- 12 -

fifth requirement has also been met as it was essential for the panel to determine damages as well as liability since the arbitration award was based on the damages suffered by the appellant."). ***But see Kaller's, Inc. v. John J. Spencer Roofing, Inc.***, 565 A.2d 794, 797 (Pa. Super. 1989) (holding that collateral estoppel did not apply because "[a]lthough the court granted the non-suit in regard to the College's claims against Spencer, a non-suit was not granted on Kaller's cross-claim against Spencer").

Here, in the arbitration, Pitney sought a determination of whether Murray's alleged design errors caused the construction delays and unanticipated costs for which Pitney withheld pay from Warfel. ***See*** Pitney's Arbitration Brief at 23 (arguing that "[Pitney] rightfully withheld payment from Warfel construction due to the improper accounting, the mismanagement of the project which caused unnecessary costs, and the delays in completion"). Furthermore, the award of the arbitrators to Warfel stated: "The counterclaims and setoffs of Pitney Road Partners, LLC t/d/b/a Redcay College Campuses I, are denied in their entirety. . . . The award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied." Award of Arbitrators, 5/12/2006, at 3.

Therefore, consideration of Murray's alleged negligent design errors was essential for the panel to determine damages. ***See Stidham***, 618 A.2d at 955; ***Meridian Oil & Gas Enters.***, 614 A.2d at 252. Contrary to Pitney's assertion that the arbitration award could have been determined on

- 13 -

alternate grounds without reaching the issue of Murray's negligence, Pitney's Brief at 18, the arbitration panel explicitly stated that the award settled "all claims and counterclaims."  Award of Arbitrators, 5/12/2006, at 3; *cf. Kaller's, Inc.*, 565 A.2d at 797.  To deny all of Pitney's counterclaims in their entirety, the arbitration panel was required to consider and decide the issue of Murray's alleged design errors.  *See Incollingo*, 575 A.2d at 941.  Thus, the fifth element of the collateral estoppel test was satisfied because the determination in the prior proceeding was essential to the judgment. *See Kituskie*, 682 A.2d at 382.  Pitney's argument that Murray did not prove the first and fifth elements of the collateral estoppel test lacks merit.

Accordingly, because Murray satisfied all five elements of collateral estoppel, *Meridian Oil & Gas Enters., Inc.*, 614 A.2d at 250, the trial court did not err or abuse its discretion in determining that Murray was entitled to summary judgment in the instant litigation as a matter of law. *Robbins*, 827 A.2d at 1214.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/2014

- 14 -