J-E01003-17

2017 PA Super 340

| | |
|---|---|
| CAROLYN RICKARD, ADMINISTRATRIX OF THE ESTATE OF WILLIAM RICKARD, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, | |
| Appellee | No. 774 WDA 2015 |

Appeal from the Order Entered April 28, 2015
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 6805-2014

BEFORE: BENDER, P.J.E., BOWES, PANELLA, SHOGAN, LAZARUS, OLSON, DUBOW, MOULTON, and SOLANO, JJ.

OPINION BY SHOGAN, J.:                          FILED OCTOBER 25, 2017

Appellant, Carolyn Rickard, Administratrix of the Estate of William Rickard, appeals from the order entered April 28, 2015, which denied her November 18, 2014 Petition for Order of Distribution in a Wrongful Death Action ("Distribution Petition"), for amounts secured through an insurance-claim settlement. For the reasons that follow, we reverse and remand to the common pleas court for proceedings consistent with this Opinion.

On July 2, 2010, William Rickard ("the Deceased") and Appellant (collectively, "the Rickards"), filed for bankruptcy. Distribution Petition, 11/18/14, Attachment (In re: William J. Rickard and Carolyn M. Rickard, Bankr. No. 10-24821-JAD (Bankr. W.D.Pa. 10/20/14),

Memorandum Opinion ("Bankruptcy Court Memorandum"), 10/20/14, at 1).

On November 16, 2012, as he was on his way to work in his personal

vehicle, the Deceased was struck from behind, rendering him paraplegic.

Distribution Petition, 11/18/14, at unnumbered 1–2. At the time of the

accident, the Deceased maintained a personal automobile insurance policy

that included $250,000 in underinsurance coverage through American

National Property and Casualty Company ("ANPAC"). Id. at 2. Because the

Deceased's accident was work related, the Western Pennsylvania Teamsters

and Employers Welfare Fund ("the Welfare Fund"), a self-insured employee

benefit plan governed by ERISA[1] that covered the Deceased, paid

$279,498.03 in medical bills and disability payments. Bankruptcy Court

Memorandum, 10/20/14, at 2.

   While the Deceased was alive, he made a claim for underinsured

benefits to ANPAC for the injuries he sustained in the accident. As noted,

the Rickards were debtors in bankruptcy at the time of the motor vehicle

accident.[2] Upon petition, the bankruptcy court authorized appointment of

_____

[1] Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq.

[2] The record adduced below is sparse. Neither the ANPAC insurance policy
nor the operative Plan language was introduced into evidence or attached to
Appellant's petition. The parties stipulated to the accuracy of the Plan
language before the bankruptcy court, however, and Appellant attached
excerpts of the language, as quoted in the bankruptcy court's memorandum
opinion, to its petition. We have utilized a combination of attachments to
(Footnote Continued Next Page)

- 2 -

separate counsel to pursue the accident litigation but, significant to the disposition of this appeal, retained the right to approve the settlement while the matter was in bankruptcy. Bankruptcy Court Memorandum, 10/20/14, at 2. Appointed counsel had no authority to enter into a settlement without the bankruptcy court's approval. ANPAC issued a settlement check for $250,000 on January 13, 2014, and appointed counsel placed the check in his safe. Appellant's Brief at 7. The Welfare Fund asserted a lien for the medical benefits it paid for the Deceased's treatment against any recovery by the Deceased for personal injury sustained in the accident. Distribution Petition, 11/18/14, at unnumbered 2. The Rickards filed a Motion to Approve Settlement of the Underinsured Motorist Claim in the Bankruptcy Court, seeking a payment of "$100,000 (or 40% of the recovery) paid to [Appellant's counsel], payment of $1,000 to bankruptcy counsel for [the Rickards], and payment of the remaining balance of $149,000 to Mr. Rickard." Bankruptcy Court Memorandum, 10/20/14, at 3. Because the proposed settlement failed to offer distribution of any funds to the Welfare Fund for its subrogated interest, the Welfare Fund objected to the Rickards' motion. Id.

On October 20, 2014, the bankruptcy court refused to approve the settlement or distribution of the accident litigation proceeds, nor did it make

(Footnote Continued) ——————————————

documents, briefs, and the reproduced record in order to provide explanation.

any distribution on its own, concluding that the Welfare Fund's plan documents[3] "unequivocally provide that the Welfare Fund is to be paid its subrogated interest first before payment to anyone else." Bankruptcy Court Memorandum, 10/20/14, at 8 (referencing an audio recording[4] of a hearing held in the bankruptcy court). The bankruptcy court further stated:

> The outcome of this case should not be construed as the [c]ourt concluding that counsel does not deserve his fee. In fact, the opposite is true. The record in this case is that counsel obtained an excellent result, worked diligently, competently, and professionally. Had the [c]ourt been writing on a clean slate, the [c]ourt surely would have concluded that counsel has earned his contingent fee.

Id. at 10. The order entered by the bankruptcy court provided: "And now, this 20th day of October, 2014, for the reasons set forth in the Memorandum Opinion filed herewith, the Motion to Approve Settlement of the Underinsured Motorist Claim is denied." Bankruptcy Court Order, 10/20/14 ("Bankruptcy Court Order") (italics in original; emphasis added). Thus, there existed no settlement of the case.

Two days later, October 22, 2014, the day Appellant's counsel avers she received the Bankruptcy Court Memorandum, William Rickard died,

---

[3] The bankruptcy court represented that "the complete plan (the "Plan") document is not of record, despite the fact that the parties filed a Stipulation that avers that the Plan is attached to it." Bankruptcy Court Memorandum, 10/20/14, at 4 (emphasis in original) (footnote omitted).

[4] "Audio Recording of Hearing Held in Courtroom D, 8/29/14 (10:11 a.m.) . . . ." Bankruptcy Court Memorandum, 10/20/14, at 4.

allegedly from the injuries he sustained in the accident. Distribution Petition, 11/18/14, at unnumbered 3; Appellant's Brief at 7. The next day, October 23, 2014, because there was no settlement, no distribution, and no living payee, counsel for Appellant returned the ANPAC check. Appellant's Brief at 7. The bankruptcy proceedings terminated one week later on October 29, 2014, when the Rickards' case was dismissed from bankruptcy with no settlement or distribution having been made. Distribution Petition, 11/18/14, at unnumbered 3.

Appellant then submitted a wholly new claim for underinsurance benefits to ANPAC pursuant to the Pennsylvania Wrongful Death Act, 42 Pa.C.S. § 8301, on behalf of herself and the Deceased's daughter, Sarah Rickard.[5] Exhibit E attached to Appellant's "Brief in Support of the Wrongful Death Claim of Decedent's Widow and Minor Child" filed in the orphans' court is a letter from Appellant's counsel to ANPAC. That letter states, in relevant part:

_____

[5] Once again, we lament the state of the certified record. While a brief by the Welfare Fund is docketed as filed in the orphans' court, the opposing brief of Appellant in support of the wrongful death claim is not. Appended to that brief are multiple documents that enhance understanding, indeed confirm the existence, of various facts in the instant case. Because those documents are shown as attachments in the Reproduced Record, we note their existence and applicability. See Nicolaou v. Martin, 153 A.3d 383, 393 n.6 (Pa. Super. 2016) (citing Commonwealth v. Barnett, 121 A.3d 534, 546 (Pa. Super. 2015), appeal denied, 128 A.3d 1204 (Pa. 2015), cert. denied sub nom., Barnett v. Pennsylvania, ___ U.S. ___, 136 S.Ct. 2391, 195 L.Ed.2d 766 (2016) (where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it)).

> Enclosed please find a copy of the Short Certificate evidencing the granting . . . of Letters of Administration on the Estate of William J. Rickard to Carolyn Rickard on October 29, 2014.
>
> As I previously informed you, on October 22, 2014, Mr. Rickard succumbed to the injury and illness suffered as a result of his automobile accident.
>
> Claim is hereby made, by Carolyn Rickard, Administratrix, under the Pennsylvania Wrongful Death Act, 42 Pa.C.S.A. § 8301 and Pa.R.C.P. 2202(a) for the full amount of the underinsurance coverage under the Rickards' auto policy.

Brief in Support of the Wrongful Death Claim of Decedent's Widow and Minor Child, Exh. E; Reproduced Record at 84A.

Under this wrongful-death claim, ANPAC issued a check made payable to counsel and Appellant. Upon receipt of the ANPAC check, Appellant filed the within Distribution Petition before the orphans' court division of the common pleas court pursuant to Allegheny County Local Rule 2039 seeking distribution of the underinsurance settlement funds. The orphans' court, in denying the Distribution Petition, determined that it was bound by collateral estoppel because the "issue before it [is] virtually identical to the issue decided by" the bankruptcy court. Orphans' Court Opinion, 4/28/15, at unnumbered 2. In the alternative, the orphans' court concluded that the Welfare Fund's subrogated interest was superior to that of Appellant and her counsel.

Appellant filed a timely appeal. The orphans' court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement, and none was filed.

Following oral argument, a panel of this Court, with one judge dissenting, filed a memorandum opinion affirming the orphans' court's decision. Rickard v. American National Property and Casualty Co., 774 WDA 2015 (Pa. Super. filed August 9, 2016) (unpublished memorandum). Thereafter, Appellant filed an application for reargument en banc. On October 20, 2016, this Court granted en banc reargument and withdrew the August 9, 2016 decision. Following the filing of new briefs, we entertained oral argument on March 21, 2017. This matter is now ripe for disposition.

Appellant raises the following three issues:

1) Does the instant bankruptcy court order which does not address whether an ERISA Fund may extend its subrogation lien to a decedent's wife and minor daughter serve as a basis to collaterally estop an orphans' court claim for wrongful death damages made after the close of the bankruptcy matter?

2) Are the wrongful death beneficiaries, spouse and minor child, precluded from recovering benefits for their separate and distinct injury by lien language in an ERISA Health and Welfare Plan, when neither the lien amounts nor lien language apply to either of the beneficiaries?

3) Does the Supreme Court's holding in U.S. Airways v. McCutchen, 133 S.Ct. 1537 (2013) require that a subrogation lien on a decedent's recovery for medical benefits paid out during a decedent's lifetime, extend to his wife and minor daughter's separate and distinct recovery in a wrongful death action?

Appellant's Brief at 4 (issues reordered).

The issue of whether the court applied the correct legal standard in distributing the wrongful death proceeds raises a question of law, i.e., construction of the Welfare Plan's subrogation and reimbursement clauses,

- 7 -

which we review de novo. Moscatiello v. Hilliard, 939 A.2d 325, 327 (Pa. 2007) (questions of law are subject to de novo review, and scope of review is plenary). The basis for the orphans' court's denial of Appellant's Distribution Petition was that "it [was] barred by the doctrine of collateral estoppel," Orphans' Court Opinion, 4/28/15, at unnumbered 2, which the court, without analysis, held applicable. We disagree.

> Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment. Collateral estoppel, sometimes referred to as issue preclusion, operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit. Kituskie v. Corbman, 452 Pa. Super. 467, 682 A.2d 378, 382 (1996) (citations and quotation marks omitted). The decision to allow or to deny a prior judicial determination to collaterally bar relitigation of an issue in a subsequent action historically has been treated as a legal issue. As such, this Court is not bound by the trial court's conclusions of law and we may draw our own conclusions from the facts as established. Meridian Oil & Gas Enters., Inc. v. Penn Cent. Corp., 418 Pa. Super. 231, 614 A.2d 246, 250 (1992), appeal denied, 534 Pa. 649, 627 A.2d 180 (1993).

Westfield Ins. Co. v. Astra Foods Inc., 134 A.3d 1045, 1049–1050 (Pa. Super. 2016), appeal denied, 102 EAL 2016, 2016 WL 5844709 (Pa. September 30, 2016).

In the present case, bankruptcy counsel asked the bankruptcy court to approve the settlement involving a living client in receipt of medical benefits

from the Welfare Fund, but the bankruptcy court refused. In re: William J. Rickard and Carolyn M. Rickard, Bankr. No. 10-24821-JAD (Bankr. W.D. Pa., filed October 20, 2014). Thus, there was no settlement. Moreover, there currently is no bankruptcy action pending. William Rickard has died. Appellant and the Deceased's minor daughter have discrete claims under the Pennsylvania Wrongful Death Statute, and these claims did not accrue until after the bankruptcy court's memorandum and order.

The issue before us is whether a wrongful death beneficiary's recovery under the Pennsylvania Wrongful Death Act is subject to a subrogation claim for benefits paid on behalf of the decedent for medical treatment during the decedent's lifetime. This issue was not before the bankruptcy court, nor could it have been, as all of the relevant bankruptcy proceedings occurred during the Deceased's lifetime. Thus, under the first prong of the test for collateral estoppel, the issue decided in the bankruptcy court is not identical to that presented herein.

The second prong requires a final adjudication on the merits. A motion to approve settlement was before the bankruptcy court, and the court denied it. The Deceased's death two days later gave rise to a wholly new claim, and seven days later, the debtors' case was dismissed from bankruptcy. There was no settlement, no determination on disbursement, and the bankruptcy court did not address the merits of whether the Welfare Fund's subrogation lien attaches to a wrongful death recovery.

The third prong requires that the party against whom the doctrine is asserted was a party or in privity with a party in the prior case. Sarah Rickard, the Deceased's minor daughter, was not a party to the bankruptcy proceedings. As a statutory beneficiary, her right to recovery is separate and distinct from her mother's claim.

Regarding the fourth prong, it is clear that no right to recovery of wrongful death benefits had accrued either to Appellant or Sarah Rickard prior to the entry of the bankruptcy court's order. Therefore, neither one had any opportunity to litigate the issue of whether the Welfare Fund's lien attached to their recovery.

The issue the Welfare Fund sought to preclude the common pleas court from deciding was not before the bankruptcy court, could not have been brought before the bankruptcy court, and therefore, was not decided by the bankruptcy court. Thus, there is no foundation for the doctrine of collateral estoppel to have been applied in this case.

The alternative basis cited by the orphans' court was its similarly conclusory pronouncement that pursuant to U.S. Airways v. McCutchen, 133 S.Ct. 1537 (2013), "the provisions of the [Welfare] Fund's plan documents control." Orphans' Court Opinion, 4/28/15, at unnumbered 2. Once again, we disagree. Because this question encompasses Appellant's issues two and three, we address them in tandem.

Pennsylvania courts have long recognized that a wrongful death action is separate and distinct from a survival action. Pisano v. Extendicare Homes, Inc., 77 A.3d 651 (Pa. Super. 2013). "[W]hile wrongful death actions are derivative of decedent's injuries, they are not derivative of decedent's rights, and therefore belong to the decedent's beneficiaries as opposed to the deceased individual." MacPherson v. Magee Memorial Hosp. for Convalescence, 128 A.3d 1209, 1226 (Pa. Super. 2015) (citing Pisano, 77 A.3d at 660). A survival claim and a wrongful death claim are separate and distinct even though they originate from the same wrongful act. As we explained in Pisano, under the Pennsylvania wrongful death statute, recovery passes to the limited group of beneficiaries defined in 42 Pa.C.S. § 8301(b), "the spouse, children or parents of the deceased." Id.

> An action for wrongful death may be brought by the personal representative of those persons entitled to receive damages for wrongful death under the statute. Tulewicz v. S.E. Pa. Transp. Auth., 529 Pa. 588, 596, 606 A.2d 427, 431 (1992). . . . Wrongful death damages are established for the purpose of compensating the spouse, children, or parents of a deceased for pecuniary loss they have sustained as a result of the death of the decedent. Tulewicz, 529 Pa. at 597, 606 A.2d at 431. . . .
>
> A survival action, on the other hand, is brought by the administrator of the decedent's estate in order to recover the loss to the estate of the decedent resulting from the tort. Tulewicz, 529 Pa. at 597, 606 A.2d at 431. . . .
>
> These two actions are designed to compensate two different categories of claimants[,] the spouse and/or members of the decedent's family for wrongful death of the decedent, and the decedent herself through the legal person of her estate. Tulewicz, 529 Pa. at 597, 606 A.2d at 431

Kiser v. Schulte, 648 A.2d 1, 4 (Pa. 1994) (some citations omitted). Thus, in a wrongful death suit, claims are brought for and on behalf of the statutory beneficiaries to obtain compensation for their loss resulting from the deceased's death. A wrongful death claim belongs exclusively to the decedent's beneficiaries and is meant to cover pecuniary and emotional loss suffered by those beneficiaries as a result of the death. By contrast, a survival claim is simply the action the decedent could have brought for the injuries he suffered prior to his death and is generally for the benefit of the estate. Because the claims are separate and distinct, and because the wrongful death action "bears no relation to the damages recoverable by a decedent who sues for the injury while living," Stegner v. Fenton, 40 A.2d 473, 475 (Pa. 1945), we cannot agree that the Deceased's contractual obligation to the Welfare Fund transferred to the wrongful-death claim.[6]

_____

[6] We note that we concur with Appellant's position that ANPAC's initial draft represented an offer to settle that was not accepted by the Deceased. Appellant's Brief at 26. The draft was returned to ANPAC after the Deceased's death. The Deceased never obtained title to any settlement funds; indeed, ANPAC is the only entity that held title to proceeds available under the Rickards' personal automobile insurance policy, as evidenced by ANPAC's ability to issue a second draft in offer of settlement of the wrongful death claim. Id.

When the bankruptcy court denied the motion to approve settlement of the underinsured motorist claim, there was no settlement. Appointed counsel had no authority to enter into a settlement; any proposed settlement had to be approved by the bankruptcy court, which withheld approval. Nor could there have been a settlement, in light of the facts of

(Footnote Continued Next Page)

Relatedly, we also reject applicability of McCutchen. That case involved a plan's right to recover from a living plan participant's bodily-injury settlement, medical benefits paid on his behalf, and is therefore inapplicable to the instant case; the funds at issue were obtained on behalf of statutorily enumerated beneficiaries pursuant to the Pennsylvania Wrongful Death Act.

Lacking relevant interpretive Pennsylvania case law, we look to illustrative cases in other jurisdictions. In cases decided after McCutchen in other jurisdictions, courts have refused to allow ERISA liens seeking reimbursement for medical benefits paid during a decedent's lifetime to extend to his wrongful death beneficiaries after death. For example, in Estate of Shackelford, 63 N.E.3d 584 (Ohio Ct. App. 2016), Jerry Shackelford received medical treatment for injuries he sustained when another vehicle ran a red light and struck his motorcycle. At the time of the accident, Shackelford was a participant in an ERISA-qualified self-funded health plan that paid over $30,000 in medical benefits for treatment stemming from the accident. Id. at 586. The plan included subrogation and reimbursement clauses entitling the plan to recover for all amounts it has

(Footnote Continued) —————————————

this case, due to Mr. Rickard's nearly contemporaneous demise. During the time between the issuance of the first ANPAC check and the bankruptcy court's denial of settlement, there merely existed a draft—a piece of paper—representing bodily injury funds, that Appellant was not permitted to accept. Thus, due to the tight factual circumstances and time frame, when Mr. Rickard passed away, an entirely new claim arose. The ensuing wrongful death cause of action vested in the Deceased's wife and daughter.

paid as a result of an injury to a covered person, "up to and including the full amount the Covered Person receives from any Responsible Party." Id. The plan also provided for the imposition of an automatic lien "to the extent of benefits paid by the Plan for treatment of injury for which the Responsible Party is liable. The lien shall be imposed upon any recovery whether by settlement, judgment, or otherwise related to treatment for any injury for which the Plan paid benefits." Id.

Jerry Shackelford died at the hospital without regaining consciousness after the crash. Mrs. Shackelford, the administratrix of his estate, obtained a settlement for both wrongful death and survival claims. Estate of Shackelford, 63 N.E.3d at 587. Mrs. Shackelford then filed an application to approve the settlement and distribution of wrongful death and survival claims in the probate court. The sole survival claim asserted at the hearing concerned Jerry Shackelford's medical expenses incurred as a result of the accident that were paid by the plan. The ERISA plan objected and claimed first priority repayment for the medical benefits it paid. The probate court, relying on McCutchen, permitted the plan to assert its lien against the unallocated gross settlement of both the wrongful death and survival actions. Id.

The Ohio Court of Appeals reversed, concluding that reliance on McCutchen was misplaced because that case did not involve the death of a

plan participant, and thus, was factually distinguishable. Significantly, the court observed:

> In support of its decision, the probate court also and primarily relied on the Plan's subrogation and reimbursement clause. However, a close reading of the clause shows that its provisions only relate to (1) payment, settlement, or judgment received by a covered person for injury to the covered person, (2) the covered person's damages, and (3) the covered person's conduct in abstaining from prejudicing the Plan's subrogation or recovery interest. The clause does not relate to any payment, settlement, or judgment received by statutory wrongful death beneficiaries for injury they sustained as a result of the wrongful death of the covered person; nor does it relate to damages of the statutory wrongful death beneficiaries. Other provisions of the clause such as the Plan's lien rights must necessarily be read in conjunction with the overall clause which is restricted to medical expenses paid for the treatment of the covered person and settlements or judgments received by the covered person.

Estate of Shackelford, 63 N.E.3d at 589 (emphasis added). Thus, the Ohio court concluded that the right to recover for wrongful death was not a right that ever belonged to Jerry Shackelford or to his estate, but solely to his statutory beneficiaries. Id. at 589. The case was remanded to the probate court with instructions that it "first allocate the settlement proceeds between the wrongful death and survival claims, and then and only then, apply the Plan's subrogation and reimbursement clause to the amount of the proceeds allocated to the survival claim." Id. at 591.

We also examine MedCath Incorporated Employee Health Care Plan v. Stratton, 79 F.Supp.3d 1046 (D. Ariz. 2015). The plan therein was an ERISA-governed self-funded employee welfare benefit plan. Ms.

- 15 -

Stratton, an employee of MedCath Incorporated, and her four children as dependents, received health benefits under the plan. In July of 2011, Ms. Stratton filed a negligence action related to medical care she had received under the plan. The plan asserted a lien and claimed it paid medical expenses totaling over $500,000 arising from the negligence alleged by Ms. Stratton. When Ms. Stratton passed away, the case was converted into a wrongful death action brought on behalf of Ms. Stratton's children, and the health plan maintained its lien against any recovery.

The Stratton Court determined that the plan's contractual rights of subrogation and reimbursement did not apply to Ms. Stratton's children, and therefore, its right to recovery could not transfer to their wrongful death claim. Stratton, 79 F.Supp.3d at 1052. The court reasoned that Ms. Stratton's children did not incur healthcare expenses, paid for by the plan, for which a third party was responsible, nor did they receive compensation for Ms. Stratton's injuries. Id. at 1053.

Having concluded that collateral estoppel does not apply herein and that this case is not controlled by McCutchen, the two bases relied upon by the common pleas court, we must reverse and remand. We agree with Appellant that neither she nor her daughter received any benefits from the Welfare Fund related to the Deceased's injuries. Any contractual obligation relating to subrogation or reimbursement that the Deceased may have owed the Welfare Fund does not transfer to any distinct wrongful-death recovery

of Appellant and her daughter.[7]  For these reasons, the matter must be remanded to the common pleas court for proceedings consistent with this Opinion.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judges Olson, Dubow, Moulton, and Solano join this Opinion.

Judge Bowes joins this Opinion with separate writing and files a Concurring Opinion in which Judges Olson, Dubow, and Solano join.

P.J.E. Bender files a Dissenting Opinion in which Judges Panella and Lazarus join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/2017

_____

[7]  We note our agreement with that portion of the Concurrence that concludes the Plan had the burden of proving a valid subrogation lien and that it failed to do so.  Thus, on that basis as well, we conclude the Plan's claim lacks merit.