J-S10033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DENISE R. BRADLEY, ADMINISTRATOR OF THE ESTATE OF WALTER BRADLEY, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 2915 EDA 2017 |
| | : | |
| THOMAS JEFFERSON HEALTH SYSTEM AND HCR MANOR CARE HEALTH SERVICES | : | |

Appeal from the Orders Entered August 4, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  04435 August Term 2015

BEFORE:  BOWES, J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 17, 2018**

Appellant Denise R. Bradley, administrator of the estate of Walter Bradley, deceased (Decedent), appeals from the orders granting summary judgment in favor of Appellees Thomas Jefferson Health System (TJHS) and Manor Care Health Services (MCHS).  Appellant claims the trial court erred in concluding that there was insufficient evidence of causation and that the statute of limitations barred Appellant's claims.[1]  We affirm in part, reverse in part, and remand for further proceedings consistent with this memorandum.

According to Appellant's amended complaint, Decedent suffered a stroke on March 17, 2013, and was admitted as an inpatient to "Jefferson," a health

_____

[1] We have reordered Appellant's arguments for the purpose of this appeal.

care facility owned and operated by TJHS. At that time, Decedent suffered from an ulcer on his right foot and a general lack of skin integrity. According to Appellant, Jefferson failed to treat Decedent's skin conditions properly, which resulted in the deterioration of the ulcer on his foot and the formation of at least two additional bedsores. Decedent was discharged from Jefferson on April 10, 2013.

That same day, Decedent was transferred from Jefferson to a facility owned, operated, and maintained by MCHS. Appellant averred that at the MCHS facility, Decedent failed to receive necessary care, which resulted in a deterioration of his bedsores.

On April 15, 2013, Decedent was transferred from the MCHS facility to Fitzgerald Mercy Hospital (Fitzgerald) for surgery on the ulcer. At that point, Decedent was suffering from stage four bedsores that affected his bone tissue.

On April 24, 2013, Decedent was discharged from Fitzgerald and readmitted to the MCHS facility. On May 23, 2013, Decedent was transferred back to Fitzgerald due to suspected pneumonia and an infected sacral decubitus ulcer.

Decedent was subsequently discharged from Fitzgerald to his home.[2] Fitzgerald reported that Decedent was clinically stable at the time of this discharge and that his sacral ulcer needed no further intervention.

_____

[2] Appellant did not specify when Decedent was discharged from Fitzgerald to his home.

- 2 -

Decedent passed away on September 3, 2013. A death certificate indicated that the cause of death was "cerebral vascular accident" and "hypertension." MCHS's Mot. Summ. J., 5/1/17, Ex. C. Appellant was granted letters of administration on December 13, 2013.

On September 2, 2015, Appellant commenced the instant action by writ of summons. Appellant filed a complaint on October 15, 2015. On October 27, 2015, Appellant discontinued her action against Fitzgerald. On November 30, 2015, Appellant filed an amended complaint against TJHS and MCHS. Appellant asserted claims of corporate negligence against each defendant (counts 1 and 2), as well as a wrongful death action (count 3), and a survival action (count 4).[3]

_____

[3] In her amended complaint, Appellant alleged:

> 17. The negligent defendant [TJHS] directly and proximately caused [Decedent] to suffer the following injuries and damages:
>
> > a. delay in diagnosis of ulcer formation risk factors;
> >
> > b. formation of additional ulcers and bedsores;
> >
> > c. severe pain, suffering and discomfort;
> >
> > d. change in mental status;
> >
> > e. fear and anxiety;
> >
> > f. economic damages.

Am. Compl., 11/30/15, ¶17. Additionally, with respect to her survival action Appellant asserted the following:

Appellees filed preliminary objections to Appellant's amended complaint, which the trial court overruled. Appellees filed separate answers and new matter raising various affirmative defenses. At the close of pleadings and discovery, Appellees filed motions for summary judgment seeking dismissal of all claims against them with prejudice.

Of relevance to this appeal, Appellees asserted that Appellant's claims were barred by the two-year statute of limitations pursuant to 42 Pa.C.S. § 5524. TJHS's Mot. for Summ. J., 4/26/17, ¶ 43; MCHS's Mot. for Summ. J. ¶ 49, 58. Appellees also argued that the report of Appellant's sole expert, John N. Cardello, R.N., Esq., failed to establish that their conduct caused Decedent's

---

39. As a direct and proximate result of the aforesaid acts of negligence, [Decedent] suffered and defendants are liable for the following damages:

   a. [D]ecedent's pain and suffering between the time of his injuries and the time of his death;

   b. [D]ecedent's total estimated future earning power less his estimated cost of personal maintenance;

   c. [D]ecedent's loss of retirement and Social Security income;

   d. [D]ecedent's other financial losses suffered as a result of his death;

   e. [D]ecedent's loss of enjoyment of life.

*Id.* ¶ 39.

death or increased the risk of harm or death.[4]  TJHS's Mot. for Summ. J. ¶¶ 75-76.; MCHS's Mot. for Summ. J. ¶¶ 29-32.  MCHS attached to its motion for summary judgment a copy of Decedent's death certificate that listed the cause of death as cerebral vascular accident and hypertension.

In response to TJHS's summary judgment motion, Appellant asserted that Cardello's expert report contained sufficient opinions to create a factual issue that the negligence with respect to the creation and exacerbation of the bedsores caused death.  Appellant claimed that portions of Cardello's report implicated an increased risk of harm while Decedent was receiving care at Jefferson.  Appellant did not address TJHS's statute of limitations claim.

In response to MCHS's summary judgment motion, Appellant also asserted that Cardello's causation opinion was adequate for a factfinder to determine the negligence with respect to bedsores as the cause death, and cited **Klein v. Aronchick**, 85 A.3d 487 (Pa. Super. 2014).[5]  Appellant further

_____

[4] Both Appellees raised additional defenses in their motions for summary judgment.  For example, TJHS asserted that (1) it did not provide any treatment to Decedent and was not a proper defendant, and (2) Cardello failed to state his opinion to a reasonable degree of medical certainty and relied on speculation.  MCHS also claimed that (1) it was an improperly named defendant, (2) service was improper, and (3) Cardello failed to state his opinions to the requisite degree of certainty.  As discussed below, the trial court did not rule on these alternative grounds for summary judgment.

[5] Appellant did not seek to strike the death certificate attached to MCHS's motion or respond to the allegation that bedsores were not a listed cause of death.

claimed that she was entitled to file her claims within two years of Decedent's death based on section 5524(2), as well as 40 P.S. § 1303.513, the "statute of repose" contained in the Medical Care Availability and Reduction of Error Act (MCARE).[6]

The trial court entered orders granting Appellees' motions for summary judgment on July 24, 2017, which the court amended on August 7, 2017. The court concluded Appellant failed to proffer adequate evidence that Appellees' negligence caused Decedent's death. The court further concluded that Appellant's claims were barred because Appellant failed to file her action within two years of the bedsores. The court did not consider any other basis for granting summary judgment in favor of Appellees.

Appellant timely appealed on August 21, 2017. The trial court did not order a Pa.R.A.P. 1925(b) statement, but filed an opinion suggesting that it properly granted summary judgment in favor of Appellees based on the issues of causation and the applicable statute of limitations.

Appellant presents the following questions for review, which we have reordered as follows:

> Whether the [trial c]ourt erred in granting summary judgment to the Appellees where [Appellant's] medical expert provided a report that explained the causal relationship between the negligence of each of the Appellees and [D]ecedent's death?

---

[6] The Medical Care Availability and Reduction of Error Act, 40 P.S. §§ 1303.101-1303.910.

Whether the [trial c]ourt erred in granting summary judgment to the Appellees where the litigation against each of them was initiated within the applicable statute of repose of the MCARE Act?

Appellant's Brief at 6.

The standards governing our review of a trial court's grant of summary judgment are well settled.

Summary judgment is appropriate, *inter alia*, where there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. **See** Pa.R.C.P. No. 1035.2(1). In considering the merits of a motion for summary judgment, the record is viewed in the light most favorable to the non-moving party, and doubts as to the presence of a genuine issue of material fact are resolved against the moving party. The appellate review is for errors of law or abuse of discretion.

**Wilson v. El-Daief**, 964 A.2d 354, 359 (Pa. 2009). "Summary judgment should be granted when the 'party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.'" **Vazquez v. CHS Prof'l Practice, P.C.**, 39 A.3d 395, 397 (Pa. Super. 2012) (citation omitted).

With respect to claims of medical malpractice,

a plaintiff must demonstrate the elements of negligence: a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of harm. With all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation.

***Stimmler v. Chestnut Hill Hosp.***, 981 A.2d 145, 154-55 (Pa. 2009) (citation

omitted).

> To establish the causation element in a professional negligence
> action, the plaintiff is **not** required to show that the defendant's
> negligence was the actual "but for" cause of the plaintiff's harm.
> Rather, under the "increased-risk-of-harm" standard, the plaintiff
> must introduce sufficient evidence that the defendant's conduct
> increased the risk of the plaintiff's harm.

***Winschel v. Jain***, 925 A.2d 782, 788 (Pa. Super. 2007) (citation omitted)

(emphasis in original).

Evidence regarding the increased risk of harm standard involves two

prongs. ***Klein***, 85 A.3d at 492 (Pa. Super. 2014). First, the plaintiff's expert

must be able testify to a reasonable degree of medical certainty that the

negligence could have caused the type of harm suffered. ***Id.*** Second, the

negligence must have been able to cause the actual harm. ***Id.*** In cases of

death, the increased risk of harm standard permits a case to proceed where

there was "any substantial possibility of survival and the defendant has

destroyed it." ***Hamil v. Bashline***, 392 A.2d 1280, 1288 (Pa. 1978).

It is also helpful to provide a brief overview of the distinctions between

wrongful death and survival actions.

> A survival claim and a wrongful death claim are separate and
> distinct even though they originate from the same wrongful act.
> [U]nder the Pennsylvania wrongful death statute, recovery passes
> to the limited group of beneficiaries defined in 42 Pa.C.S. §
> 8301(b), "the spouse, children or parents of the deceased."
>
>> An action for wrongful death may be brought by the
>> personal representative of those persons entitled to receive
>> damages for wrongful death under the statute. . . .

> Wrongful death damages are established for the purpose of compensating the spouse, children, or parents of a deceased for pecuniary loss they have sustained as a result of the death of the decedent. . . .
>
> A survival action, on the other hand, is brought by the administrator of the decedent's estate in order to recover the loss to the estate of the decedent resulting from the tort. . . .
>
> These two actions are designed to compensate two different categories of claimants[,] the spouse and/or members of the decedent's family for wrongful death of the decedent, and the decedent herself through the legal person of her estate.
>
> Thus, in a wrongful death suit, claims are brought for and on behalf of the statutory beneficiaries to obtain compensation for their loss resulting from the deceased's death. A wrongful death claim belongs exclusively to the decedent's beneficiaries and is meant to cover pecuniary and emotional loss suffered by those beneficiaries as a result of the death. By contrast, a survival claim is simply the action the decedent could have brought for the injuries he suffered prior to his death and is generally for the benefit of the estate.

*Rickard v. Am. Nat'l Prop. & Cas. Co.*, 173 A.3d 299, 305-06 (Pa. Super. 2017) (*en banc*) (citations omitted).

Mindful of the foregoing principles, we proceed to consider Appellant's arguments that the trial court erred in granting summary judgment in favor of Appellees.

Appellant first claims that Cardello's report provided sufficient bases for a factfinder to find an increased risk of harm of death. Appellant emphasizes that Cardello opined that "negligence was at root of [Decedent's] downward spiral." Appellant's Brief at 22. Additionally, Appellant contends that Cardello

attached to his report literature indicating that pressure sores "present a 'serious problem' that can 'lead to sepsis or death.'" *Id.* at 22-23.

Following our review of the record, we agree with the trial court that Cardello's passing reference to a "downward spiral" failed to raise a genuine issue of fact for the jury to decide. The causal connection from bedsores to sepsis to death is not so self-evident that expert testimony was not required. *See Stimmler*, 981 A.2d at 154–55. Similarly, Appellant cannot simply rely on the literature indicating bedsores could result in sepsis and lead to death as a substitute for a proper expert opinion that the negligent treatment of the bedsores alleged herein increased the risk of sepsis and death. Thus, even reviewing the record in a light most favorable to Appellant as the non-moving party, we discern no abuse of discretion or error of law in the trial court's ruling.

Because Appellant failed to adduce adequate allegations that the alleged negligence caused death, we affirm the trial court's ruling dismissing Appellant's wrongful death action set forth in Appellant's amended complaint. For the same reasons, we agree with the trial court that Appellant cannot maintain a survival action based on the claims that Appellees caused or increased the likelihood of Decedent's death.

Nevertheless, a survival action may include injuries Decedent suffered short of death, for example, the bedsores themselves.[7] *See* 42 Pa.C.S. §

---

[7] *See supra* note 3 (indicating Appellant sought damages including pain and suffering prior to death in her survival action).

- 10 -

8302 (prescribing that "[a]ll causes of action . . . real or personal" survive the death of the plaintiff); *cf. Rickard*, 173 A.3d at 306 ("a survival claim is simply the action the decedent could have brought for the injuries he suffered prior to his death and is generally for the benefit of the estate"). Therefore, we must consider the trial court's ruling that the statute of limitations barred Appellant's action.

Appellant claims the MCARE Act created a separate statute of limitation in section 1303.513(d) that preempts the general statute of limitations in section 5524. Appellant's Brief at 16-17. Appellant thus suggests that section 1303.513 permitted her to commence her action within two years of Decedent's death. *Id.* at 18.

Appellant's claim raises a question of statutory interpretation. Our review, therefore, is *de novo* and plenary. **See Bulebosh v. Flannery**, 91 A.3d 1241, 1243 (Pa. Super. 2014).

Section 5524(2) provides that "[a]n action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another" must be commenced within two years. 42 Pa.C.S. § 5524(2). "The time within which a matter must be commenced" is generally computed "from the time the cause of action accrued." 42 Pa.C.S. § 5502(a). A cause of action generally accrues when an injury is inflicted. **Wilson**, 964 A.2d at 361.

Section 1303.513 states:

**(a) General rule.--**Except as provided in subsection (b) or (c), no cause of action asserting a medical professional liability claim may be commenced after seven years from the date of the alleged tort or breach of contract.

**(b) Injuries caused by foreign object.--**If the injury is or was caused by a foreign object unintentionally left in the individual's body, the limitation in subsection (a) shall not apply.

**(c) Injuries of minors.--**No cause of action asserting a medical professional liability claim may be commenced by or on behalf of a minor after seven years from the date of the alleged tort or breach of contract or after the minor attains the age of 20 years, whichever is later.

**(d) Death or survival actions.--If the claim is brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (relating to survival action), the action must be commenced within two years after the death** in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death.

**(e) Applicability.--**No cause of action barred prior to the effective date of this section shall be revived by reason of the enactment of this section.

**(f) Definition.--**For purposes of this section, a "minor" is an individual who has not yet attained the age of 18 years.

40 P.S. § 1303.513 (emphasis added). The MCARE Act defines a "medical professional liability claim" as "[a]ny claim seeking the recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of health care services which were or should have been provided." 40 P.S. § 1303.103.

The Pennsylvania Supreme Court recently discussed the interaction between section 5524(2) and section 1303.513 in *Dubose v. Quinlan*, 173

A.3d 634 (Pa. 2017).[8]  The decedent in *Dubose* suffered from bedsores that deteriorated during a 2005 stay at a nursing home.  She developed additional bedsores after her admission to a hospital.  One of the sores became infected in July of 2007.  The infection resulted in sepsis, and the decedent was readmitted to the hospital in September 2007.  One month later, the decedent died from septic shock caused by multiple bedsores and dehydration.

The administrator of the decedent's estate in *Dubose* commenced an action against the nursing home and the hospital in August of 2009 and asserted claims of negligence and wrongful death.  The administrator then filed a second action against the nursing home and hospital administrators asserting wrongful death and survival actions.  The administrator of the estate prevailed at trial.

The appellants in *Dubose*—the nursing home and the hospital— appealed, arguing, in relevant part, that the action was barred by the two-year statute of limitations pursuant to section 5524(2).  The appellants asserted that the trial court erred in relying on section 1303.513(d) to "revive causes of action that the statute of limitations barred."  *Dubose*, 173 A.3d at 637-38.  This Court affirmed the trial court's ruling on the statute of limitations.  *Id.* at 639 (discussing *Dubose v. Quinlan*, 125 A.3d 1231 (Pa. Super. 2015)).  The Pennsylvania Supreme Court granted allowance of appeal.

---

[8] The Pennsylvania Supreme Court decided *Dubose* on November 22, 2017, one month after the trial court authored its Rule 1925(a) opinion.

In **Dubose**, the Pennsylvania Supreme Court recognized that traditionally, "a statute of limitations creates 'a time limit for suing in a civil case, based on the date when the claim accrued.' Measured by this standard, a claim accrues in a personal-injury or property-damage action 'when the injury occurred or was discovered.'" **Id.** at 643-44 (citations omitted). With respect to survival actions, the Court noted the traditional view that:

> [t]he statute [of limitations] will, of course, begin to run prior to death with respect to injuries that the afflicted individual should reasonably have "discovered" while alive, and, for this reason, it was held in [**Anthony v. Koppers Co.**, 436 A.2d 181, 185 (Pa. 1981)] that the survival statute begins to run, "at the latest," at death. The explanation for this lies in the nature of the survival cause of action, for, as stated in **Anthony**, "the survival statutes do not create a new cause of action; they simply permit a personal representative to enforce a cause of action which has already accrued to the deceased before his death." . . . [T]he "accrual" concept was expressly recognized in **Anthony**; hence, the statute of limitations was regarded as running, at the latest, from the time of death, unless it had earlier "accrued" through the fact that the victim knew, or should reasonably have known, of his injury.
>
> ***
>
> In the context of survival actions, which, as heretofore discussed, merely permit a personal representative to pursue a cause of action that had already accrued to a victim prior to death, the **Pocono**[ **International Raceway v. Pocono Produce, Inc.**, . . . 468 A.2d 468 ( [Pa.] 1983),] rule causes the statute of limitations to commence to run on the date when the victim ascertained, or in the exercise of due diligence should have ascertained, the fact of a cause of action. In no case, however, can that date be later than the date of death; hence, the statute runs, at the latest, from death. Because death is a definitely ascertainable event, and survivors are put on notice that, if an action is to be brought, the cause of action must be determined through the extensive means available at the time of death, there is no basis to extend application of the discovery rule to permit

- 14 -

the filing of survival actions, or wrongful death actions, at times beyond the specified statutory period.

*Id.* at 645-46 (some citations and emphasis somitted).

The ***Dubose*** Court, however, determined that section 1303.513(d) constituted a statute of limitation that modified the traditional accrual date for survival actions. ***See id.*** at 643, 648. The Court first reasoned that the text of section 1303.513(d) mirrored the traditional statute of limitation because it focused "not on the defendant's conduct but the time within which the plaintiff must sue." *Id.* at 647. Moreover, unlike statutes of repose that were not subject to equitable tolling, section 1303.513(d) contained an equitable tolling provision based on "'affirmative misrepresentation or fraudulent concealment of the cause of death.'" *Id.* (quoting 40 P.S. § 1303.513(d)).

The ***Dubose*** Court next determined that section 1303.513(d) "prevail[ed] over the general statute of limitations for personal injuries actions contained in [section 5524(2)]." *Id.* The Court noted that it was within the General Assembly's province to enact a "more specific statute of limitations for medical professional liability that results in death." *Id.* at 648.

> If the General Assembly wanted to set a statute of repose of two years from the date of decedent's death, it could have provided, similar to Section 513(a), "no cause of action for wrongful death or survival may be commenced after two years from the death." It did not; instead, it created a statute of limitations for medical professional liability cases resulting in death, which accrues at the time of decedent's death.

*Id.*

The Court thus concluded that the intent of section 1303.513(d) was to create a new statute of limitations for medical professional liability cases

resulting in death and thereby modify the traditional common law principle that the survival action accrued at the time of the injury. *Id.* In the final statement of its holding, the ***Dubose*** Court declared: "In conclusion, we hold that [section 1303.513(d)] establishes a two-year statute of limitations for medical professional liability cases in the form of wrongful death or survival actions, which accrues at the time of the decedent's death." *Id.*

The remaining question in this appeal is whether the statute of limitation in section 1303.513(d) is limited to cases resulting in death. Section 1303.513(d) does not distinguish between a survival action based on death or an injury short of death. ***See*** 40 P.S. § 1303.513(d) ("[i]f the claim is brought under . . . [section] 8302 (relating to survival action), the action must be commenced within two years after the death"; ***see also*** 40 P.S. § 1303.103 (defining a medical professional liability claim as including claims for injury or death). Therefore, although ***Dubose*** involved a survival claim resulting in death, the plain language of section 1303.513(d) compels the conclusion that the same statute of limitation be applied to all survival actions, including actions involving injuries short of death. Accordingly, we are constrained to conclude that Appellant had two years from the date of death to bring her survival claims for injuries that did not result in death.

Thus, we reverse the trial court's ruling to the extent that Appellant's claim for injuries short of death were barred because Appellant failed to commence her action within two years of the injuries. Because the court did not address Appellees' remaining arguments in support of their motions for

summary judgment, we vacate the orders and remand for further consideration of Appellees' motions with respect to Appellant's remaining survival claim for damages based on the bedsores.[9]

Orders affirmed in part and reversed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/18

---

[9] The trial court, following remand, may consider whether Appellant's failure to respond to TJHS's motion for summary judgment constitutes waiver.